# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **KRISTI DEVINE, ET AL.,** )<br> **Plaintiffs,** )<br> )<br> **v.** )<br> )<br> **TOWN OF WEST NEWBURY, et al.,** )<br> **Defendants.** ) | **Civ. Action No. 07cv11720-NG** |

**GERTNER, D.J.:**

## CORRECTED
## MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT
July 10, 2009

## I.     INTRODUCTION

The Plaintiffs in this action, Kristi Devine and her family, have brought a pro se civil rights suit against the Town of West Newbury, Massachusetts, several West Newbury police officers,[1] town officials,[2] and four of their neighbors.[3]  The complaint arises from the extraordinary escalation of a property dispute between neighbors, culminating in multiple arrests for assault and battery and intimidation of a witness, a state court order barring Kristi Devine from her home for nine months, and, ultimately, the filing of this federal lawsuit on September 14, 2007.  Recounting events dating back to their arrival in West Newbury in 2000, the Plaintiffs lodge eighteen separate federal civil rights claims together with seven pendent state law claims against the various defendants.  Compl. ¶¶ 24-94.  Though wide-ranging in its claims, the crux of the complaint alleges that Kristi Devine was arrested and prosecuted as the result of a conspiracy

---

[1] Defendants John Dennis, West Newbury Chief of Police; Charles Courtemanche, Police Sergeant; and Police Officers Lisa Holmes and David L'Esperance are all sued in their individual and official capacities.

[2] Defendants Albert Knowles, Ann O'Sullivan, Richard Cushing, Glen Kemper, John McGrath, Lawrence Murphy, who were West Newbury Selectmen at the time of the complaint; Lawrence Murphy, Town Counsel and Town Clerk; and Glenn Clouhecy, Building Inspector are all sued in their individual and official capacities.

[3] Defendants Jocelyn Mackey, Steve Paradeso, Beth Paradeso, and Dale Waring.

by her neighbors, town officials, and the police that sought to force her and her family to leave their property and the Town of West Newbury.

The Town of West Newbury, the police officers, and the town officials -- collectively labeled the "Town Defendants" here -- have filed a Motion for Summary Judgment (document # 72) on all of the Plaintiffs' claims.  For the reasons discussed below, the Town Defendants' motion is **GRANTED**.  The Plaintiffs' Motion to Dismiss the Town Defendants' Motion for Summary Judgment (document # 79), which is construed as a motion for additional discovery under Fed. R. Civ. P. 56(f), is **DENIED**.

## II.    FACTS

In 2000, Plaintiff Kristi Devine purchased property in the Town of West Newbury, Massachusetts with her family -- Plaintiffs Michael Devine, Erin Devine, Kayleen Devine, Kelly Devine, and M. Tucker Devine.  The family intended to build a house on the property at 7 Montclair Road, and shortly thereafter set out to do so.  Devine's complaint alleges that these efforts soon met the opposition of one of her abutting neighbors, Jocelyn Mackey, who objected to the construction, claimed a portion of the land, and subsequently pursued a campaign of harassment and intimidation against the family that continues to the present.  See Compl. ¶ 35; Pl. Interrog. Resp. at 31-49 (document # 75-12).  According to the Plaintiffs, these actions included: numerous instances of screaming at Kristi Devine, her children, and various contractors; repeated trespassing; hundreds of calls to the police over seven years; destruction of property; and an assault and battery on Kristi Devine herself.  Id.  Some of the allegations were the subject of a previous state court civil lawsuit concerning both a disputed strip of land on the common boundary and an alleged assault in July 2000.  See Findings of Fact and Conclusions of

Law, Mackey v. Devine, Essex Superior Court, No. 00-1617D (Jan. 22, 2003) (Billings, J.)

(consolidated with Mackey v. Devine, Essex Land Court, No. 266-099); Sua Sponte Dismissal of

Action, Mackey v. Devine, Essex Superior Court, No. 00-1617D (Aug. 18, 2006) (Riley, J.).

Although the chronology is not entirely clear, the gist of Devine's narrative suggests that

at some point several other neighbors -- Defendants Dale Waring, Steve Paradeso, and Beth

Paradeso -- became involved in the campaign to prevent the family from building on their

property.  This conflict also escalated and on June 20, 2004, Devine and Waring were involved

in physical altercation.  The police were subsequently called to the scene, provided basic medical

assistance, interviewed both Devine and Waring as well as witnesses, and prepared a report on

the incident.  See June 21, 2004 Police Report (document # 75-6).  Based on their assessment,

the West Newbury police decided to criminally charge Kristi Devine and issued a summons for

assault and battery, disorderly conduct, disturbing the peace, and reckless operation of a motor

vehicle.  See June 22, 2004 Summons (document # 75-6); Criminal Docket, No. 0422-CR-

001262 (document # 75-7).

Devine was not arrested at the time of this incident, but three months later a warrant was

issued for her arrest in relation to her alleged intimidation of a witness, Defendant Dale Waring.

See Sept. 16, 2004 Police Report (document # 75-8).  On September 15, 2004, Devine was

arrested at her home, booked at the police station, and immediately arraigned at the Newburyport

Court, where she was warned to stay away from Waring, and then released.  Id.

Although she does not identify the incident in her Complaint, discovery materials

indicate that Devine was arrested again on October 1, 2004, this time for assault with a

dangerous weapon.  According to Devine, the arrest related to an encounter with Mackey,

though the Court has been offered no further details by either side.  After the incident, Devine

claims that Defendant L'Esperance preempted any investigation of what had happened and

instead "coordinated" Devine's false arrest, despite unspecified evidence to the contrary, hoping

to have her jailed in Framingham Prison.  See Pl. Interrog. Resp. at 57, 69.

While these criminal charges were still pending, Devine was arrested again on June 21,

2005, once more in relation to alleged intimidation of Waring.  See June 21, 2005 Police Report

(document # 75-9).  On this occasion, Devine was alleged to have driven her car at Waring as he

mowed the lawn along the front of his property, swerving to avoid him at the last second while

blaring the horn.  Id.  For her part, Devine claimed that Waring threw rocks and grass at her

vehicle as she drove past.  Id.  A police officer who arrived at the scene took oral statements

from both Waring and Devine, examined her car, and noted in his report that he had been unable

to identify any debris or damage to the vehicle.  Id.  The West Newbury police did not

immediately arrest Devine, however she was taken into custody approximately two hours later

when she dropped off a written statement at the police station.  She was later arraigned at the

Newburyport Court and held without bail for three days, until June 24, 2005, when a bail hearing

was held.  See Criminal Docket, No. 0422-CR-001262.  At that time, Devine was released.

On January 31, 2006, the Newburyport Court issued a general continuance with respect

to all of the outstanding criminal charges against Kristi Devine.  Id.  For the first nine months,

the continuance required Devine "not to reside" at 7 Montclair Road, West Newbury, and to

have "no contact" with Dale Waring or Jocelyn Mackey.  Id.  For nine months thereafter, these

conditions permitted Devine to reside at the property but prohibited her from having any

"unavoidable contact" with Dale Waring or Jocelyn Mackey.  Id.  The conditions were modified

on May 8, 2006, to require Devine to attend weekly counseling while allowing her to return to the property on a daily basis from 10:00 a.m. to 8:00 p.m.  Id.

At some point during these events, the Devines rented the premises at 7 Montclair Road to Karla and Owen Shetreet -- a lease which extended until August 31, 2006.  See Mem. of Decision, Shetreet v. Devine, Newburyport District Court, No. 200722-SC-638 (May 22, 2008) (document 58-3).  This lease subsequently became the subject of a housing court lawsuit, resulting in a judgment against the Devines after they refused to return the tenants' security deposit as required by Mass. Gen. L. c. 186, § 15B.  Id. (ordering the Devines to pay $11,934.02 in treble damages and attorney's fees) ; see also July 30, 2008 Order at 5-6 (document # 71).

Although the general continuance conditions associated with Kristi Devine's criminal charges were set to expire on July 31, 2007, the Plaintiffs again leased their house, this time to Gerald and Barbara Foster, for a one-year period beginning June 1, 2007.  The events that followed are laid out in detail in the Court's July 30, 2008 Order (document # 71).  See id. at 7-16.  For the purposes here, it suffices to say that relations between the Fosters and their landlords deteriorated, resulting in another housing court lawsuit as well as a temporary restraining order ("TRO") barring Ms. Devine from "recovering or attempting to recover possession of the premises, except pursuant to a valid court order."  Id. at 9-10; Decision and Order, Devine v. Foster, Mass. Northeast Housing Court, No. 07-CV-00254 (Feb. 26, 2008) (document # 75-11).  This litigation resulted in a second judgment against Kristi Devine totaling $17,658.04.[4]  Id.

---

[4] It is worth noting that Judge Kerman, who heard the consolidated Housing Court lawsuit, found that Devine's eviction suit against the Fosters was "utterly false and groundless, and that her conduct throughout [the Housing Court] litigation was spiteful, vexatious, malicious, and in bad faith."  Decision and Order at 8, Devine v. Foster, Mass. Northeast Housing Court, No. 07-CV-00254 (Feb. 26, 2008).

Although the present lawsuit was filed in September 2007, the Plaintiffs subsequently sought to add both the Fosters and their attorney, Paul Carroll, as defendants to this action.  This motion to amend was denied on October 15, 2008, and again on a motion for reconsideration on April 21, 2009.

## III.   RULE 56(f) MOTION

The Plaintiffs' opposition to the Motion for Summary Judgment (document # 79) was filed on September 2, 2008, and was labeled, in the alternative, as a Motion to Enlarge Time to Respond.  The Court construes this request as a motion pursuant to Fed. R. Civ. P. 56(f) seeking additional discovery.

Discovery in this case began in March 2008 and was slated to continue until September 12, 2008.  See Scheduling Order (document # 32).  As the record makes clear, discovery continued well past both the initial discovery deadline and the date of Devine's request for additional discovery on September 2, 2008.  See Oct. 20, 2008 Order (document # 88) (granting, in part, Plaintiffs' Motion to Compel).  Likewise, the Plaintiffs have had months since that time to supplement the factual record before the Court -- through affidavits or other submissions -- based on the discovery received or materials already in their possession.  Yet they have offered no new facts or arguments, even while filing multiple requests to broaden this lawsuit beyond its already-expansive limits.  See Motion to Amend Complaint (document # 94); Motion to Expedite Preliminary Injunction (document # 89).

In light of this procedural history, the Plaintiffs' Motion to Enlarge Time to Respond (document # 79) is **DENIED**.

IV.    **SUMMARY JUDGMENT STANDARD**

This case is before the Court on the Town Defendants' motion for summary judgment, so all facts must be taken in the light most favorable to the Plaintiffs, the non-moving party.  Fed. R. Civ. P. 56(c); Mariasch v. Gillette Co., 521 F.3d 68, 71 (1st Cir. 2008).  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation."  Ingram v. Brink's, Inc., 414 F.3d 222, 228-29 (1st Cir. 2005).

In this case, the Plaintiffs have proceeded pro se; they urge the Court to "read the complaint's allegations expansively," suggesting that the Court should "go to particular pains to protect pro se litigants against consequences of technical errors if injustice would otherwise result."  See Pl. Opp. to S.J. at 2 (document # 79) (citing United States v. Sanchez, 88 F.3d 1243 (D.C. Cir. 1996)).  The Plaintiffs are surely correct that pro se litigants are entitled to a measure of tolerance, in technical matters, that the Court does not afford to parties represented by counsel.  But that view does not release them from the substantive requirements of pleading and proof at each stage of the litigation.  "[T]he Federal Rules of Civil Procedure specifically provide that general allegations, while possibly sufficient to state a cause of action, must be supported by specific facts showing a genuine issue for trial to survive a summary judgment motion."  Mas Marques v. Digital Equipment Corp., 490 F .Supp. 56, 57 (D. Mass. 1980) (citing Fed. R. Civ. P.

56(e)).  Indeed, whether represented by an attorney or not, "[i]t is axiomatic that a Plaintiff

cannot withstand a motion for summary judgment if she is unable to present some credible

evidence on each of the elements of her claim with respect to which she has the burden of proof

at trial."  Rennie v. United Parcel Service, 139 F. Supp. 2d 159, 169 (D. Mass. 2001).  As the

Supreme Court has put it, "[i]f the nonmoving party cannot muster sufficient evidence to make

out its claim, a trial would be useless and the moving party is entitled to summary judgment as a

matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986); see also Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249-250 (1986); Brennan v. Hendrigan, 888 F.2d 189, 191 (1st Cir.

1989) ("It is settled that the nonmovant may not rest upon mere allegations, but must adduce

specific, provable facts demonstrating that there is a triable issue."); Fed. R. Civ. P. 56(c).  In

short, pro se status does not automatically entitle a plaintiff to a trial.

        In their Motion for Summary Judgment, the Town Defendants do not challenge the pro se

complaint, which would be entitled to a generous reading on a motion to dismiss.[5]  Rather, they

challenge the underlying factual basis for Plaintiffs' claims.  Accordingly, in order for those

claims to survive, the Plaintiffs must provide enough evidence -- supported by deposition

testimony, documents, or affidavits -- to show that material facts are in genuine dispute.  In this

case, they have failed to supply such evidence.

## V.    STATUTE OF LIMITATIONS

        Like the myriad claims asserted in the Devines' complaint, the supporting allegations are

extremely wide-ranging, describing events spanning some seven years.  Given the expansive

---

        [5] The Court notes that the complaint was never tested on a motion to dismiss.  In fact, in all likelihood, a
number of the claims would have been eliminated at that stage for failure to state a claim upon which relief could be
granted, as the subsequent analysis makes clear.  See Fed. R. Civ. P. 12(b)(6).

nature of these claims and allegations, the Court must make one crucial limitation clear at the outset.

The statute of limitations for the Plaintiffs' federal claims is fixed by reference to 42 U.S.C. § 1983.  Only Count I expressly invokes Section 1983, while Counts III to XVIII appear to plead causes of action directly under the Constitution.  But when Section 1983 offers a remedy, "an implied cause of action grounded on the Constitution is not available."  Pauk v. Board of Trustees of City University of New York, 654 F.2d 856, 865 (2d Cir. 1981).  Because Section 1983 creates the exclusive remedy for constitutional violations by state actors wherever it applies, in the case of this pro se plaintiff the Court will consider the constitutional claims as brought under the statute.  See Braintree Baptist Temple v. Holbrook Public Schools, 616 F.Supp. 81, 88 (D. Mass. 1984) (construing constitutional claims in support of Section 1983 claim).[6]

Section 1983, in turn, carries a statute of limitations equal to the forum state's statute of limitations for personal injury actions.  Owens v. Okure, 488 U.S. 235, 240-41 (1989).  The same principle applies to claims brought under 42 U.S.C. § 1985, which Plaintiffs invoke in Count II. See Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 97 (1st Cir. 2004).  In the case of Massachusetts, that limitations period is three years.  Mass. Gen. L. ch. 260, § 2A.  While their complaint was filed on September 14, 2007, the Plaintiffs recount events reaching as far back as their arrival in West Newbury in 2000.  The Court recognizes that these incidents may serve as background information, but they cannot supply a cause of action on which Plaintiffs may

---

[6] Conversely, the Plaintiffs cannot state a claim under Section 1983 standing alone, as they seek to do in Count I, because the statute is not a source of rights itself.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979) (Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred").

recover.  Given the three-year limitations period, only events on or after September 14, 2004, provide a basis for stating a claim in this action.

## VI.   **DISCUSSION**

### A.   **Overview**

The Plaintiffs raise a vast array of constitutional claims, ranging from free exercise violations to excessive bail.  As a factual matter, they fall into the following broad categories: (1) claims that the Defendants together conspired to deprive Kristi Devine and her family of their civil rights, and selectively targeted Plaintiffs based on their mistaken belief that the Plaintiffs were Jewish (Counts II, IV); (2) claims of false arrest and excessive force relating to Kristi Devine's arrests by West Newbury police on September 15, 2004, and June 21, 2005 (Counts V, XI, XII); (3) claims concerning Kristi Devine's subsequent prosecution in state court, including the court-ordered general continuance which required that Devine not reside at 7 Montclair Road for a period of nine  months (Counts VI, VII, IX, XIII, XIV, XV, XVI, XVII, XVIII); and (4) claims that the police and town selectmen were not responsive to the Plaintiffs' complaints, impairing their First Amendment right to petition for redress of grievances, and otherwise violated their free speech and free exercise rights (Counts VII, VIII, IX, and X).

These claims fail for a wide variety of reasons, but most of all because the Plaintiffs have failed to put before the Court any specific, credible evidence supporting their claims of conspiracy, false arrest, prosecutorial misconduct, and discrimination.

### B.   **State Action**

As an initial matter, the Court finds that the Plaintiffs' federal claims -- which uniformly allege injuries under the Constitution -- cannot succeed against the private defendants.

Constitutional claims can only be directed against state actors, or those who have effectively functioned as a state actor.  <u>See</u> <u>Brentwood Acad. v. Tenn. Secondary School Athletic Ass'n</u>, 531 U.S. 288, 295 (2001).  Here, "a private party can be fairly characterized as a state actor if the circumstances of the case meet one of three tests: the public function test, the joint action/nexus test, or the state compulsion test."  <u>Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto</u>, 522 F.3d 1, 4 (1st Cir. 2008) (citing <u>Estades-Negroni v. CPC Hosp. San Juan Capestrano</u>, 412 F.3d 1, 5 (1st Cir. 2005)).  The only tenable theory in this case would be the second, where private citizens are "participant[s] in joint activity with the State or its agents." <u>Lugar v. Edmonson Oil Co.</u>, 457 U.S. 922, 941 (1982) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970)) (internal quotation marks omitted).  Yet apart from Devine's sweeping allegations of a conspiracy to violate her family's civil rights, discussed below, the Court has no evidence that any private defendant was enlisted in a joint activity with town officials or town police.  Whatever the nature of the neighborhood feud, nothing suggests that Devine's neighbors assumed official duties or powers, or were otherwise in league with the Town Defendants.  Accordingly, the state action requirement has not been met for these parties, and the constitutional claims against them are dismissed.

### C.   Section 1985 and Equal Protection Claims (Counts II and IV)

The crux of Devine's Complaint is that several of her neighbors, in league with West Newbury town officials and police, engaged in a wide-ranging conspiracy to violate her constitutional rights.  This view is broadly captured in her claim under 42 U.S.C. § 1985 (Count II), which imposes liability "[i]f two or more persons in any State or Territory conspire . . . for

the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."

The First Circuit has held that claims under Section 1985(3) must satisfy four requirements: (1) two or more persons must conspire, (2) to deprive, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws, (3) one or more of the conspirators must have done or caused to be done an act in furtherance of the object of the conspiracy, and (4) the Plaintiff must have suffered either an injury to person or property or a deprivation of a constitutionally protected right or privilege as a result of the conspiracy. Andrade v. Jamestown Housing Auth., 82 F.3d 1179, 1192 (1st Cir.1996); see also Perez-Sanchez v. Public Building Authority, 531 F.3d 104, 107 (1st Cir. 2008) (citing Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)). The second element requires, in particular, that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Yet the Plaintiffs have put forward no credible evidence of any class-based discriminatory animus, much less evidence of an agreement that would support their conspiracy claim.

Although Plaintiffs' Section 1985 claim does not make any allegation of class-based discrimination, Count XV, for denial of the right to vote, states "The discriminatory practices and actions that lead to this originated from the Defendants' hatred of the Jewish Religion. The Plaintiffs assert that they have been discriminated against because of their perceived race and ethnic background." Compl. ¶¶ 76-77 (emphasis added); see also id. at ¶ 55. Construing the Complaint liberally, the Plaintiffs allege that neighbors and town officials conspired to violate

their civil rights because they believed, incorrectly, that the Devines were Jewish.  See id. ¶¶ 55, 76-77; Pl. Interrog. Resp. at 77 (document 75-13) ("The Plaintiffs were believed to be of Jewish descent").

It is the only factual support for this allegation is Kristi Devine's statement that her neighbor, Jocelyn Mackey, frequently shouted anti-Semitic epithets at both her and her son.  See Pl. Interrog. Resp. at 79-87 (document 75-13); Mot. for Inj. Relief, App'x at 3 (document 51-2). Other than these allegations, no evidence in the record suggests class-based animus on the part of any other defendant.

It is an open question in the First Circuit whether a defendant's mistaken belief that a plaintiff belonged to a protected class may support a discrimination claim.  See Rivera-Cotto v. Rivera, 38 F.3d 611, 614 n.3 (1st Cir. 1994); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 57 n.7 (1st Cir. 1990) (overruled on other grounds).  Even assuming that it can, the Plaintiffs have offered no credible evidence that such anti-Semitic bias motivated the alleged conspiracy by neighbors and town officials.  Indeed, there is no proof of a conspiracy or agreement at all -- only Plaintiffs' "conclusory allegations."  Ingram v. Brink's, Inc., 414 F.3d 222, 228-29 (1st Cir. 2005).  At summary judgment, this is simply not enough.  Because the Plaintiffs have failed to present a triable question of fact related to Section 1985's class-based animus requirement, as well as the very existence of a conspiracy, this claim fails.

For much the same reasons, the Plaintiffs' equal protection claim in Count IV is rejected. While the precise factual basis for these claims is not clear from the Complaint's boilerplate language, it also fails because the Plaintiffs have not offered proof of discriminatory animus by any state actor.  Compl. ¶¶ 44, 45.  So far as one can surmise, Kristi Devine alleges that town

officials and police acted to prevent her family from building on their property, refused to respond to her complaints, and ultimately arrested her on multiple occasions because they believed, again mistakenly, that the Devines were Jewish.  See Pl. Interrog. Resp. at 76-84.

Yet what is missing, wherever one looks, is any evidence that the alleged actions were motivated by bias against a protected class.  "The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."  DeShaney v. Winnebago County, 489 U.S. 189, 197 n.3 (1989).  Much the same, the State may not bar individuals from building on their property on account of their membership in a protected class.  See Macone v. Town of Wakefield, 277 F.3d 1, 10 (1st Cir. 2002); Rubinovitz v. Rogato, 60 F.3d 906 (1st Cir. 1995).  But in all these instances, "purposeful discrimination is 'the condition that offends the Constitution.'"  Soto v. Flores, 103 F.3d 1056, 1067 (1st Cir. 1997) (citing Personnel Administrator v. Feeney, 442 U.S. 256, 274 (1979)); Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen, 878 F.2d 16, 21 (1st Cir. 1989) (finding liability for permitting and zoning decisions only where unequal treatment is based on "an impermissible consideration, such as race").  The absence of any proof supporting this crucial element defeats the Plaintiffs' equal protection claims.

### D.    False Arrest and Excessive Force Claims (Counts V, XI, and XII)

Under the Fourth, Fifth, and Fourteenth Amendments, Kristi Devine has brought various claims for the "unlawful seizure of Plaintiff's person by making false allegations and false police reports," as well as for the consequences of her three arrests.  Compl. ¶¶ 47-48, 61, 63.  To the extent that these claims simply repeat allegations relating to the conditions of the general continuance issued by the Newburyport Court, they are addressed below.  See Part VI.E, infra.

With respect to the arrests themselves, the principal question is whether they were supported by probable cause.  See Singer v. Fulton County Sheriff, 63 F.3d 110, 118-119 (1st Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); see also Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 6 (1st Cir. 1997).

### 1.      September 15, 2004 Arrest

Devine's first arrest, on September 15, 2004, was performed pursuant to a warrant, which the Plaintiff has not disputed.  See Sept. 16, 2004 Police Report (document # 75-8).  On that occasion, Devine was taken into custody for allegedly intimidating a witness, her neighbor Dale Waring.  An officer who conducts an arrest pursuant to a warrant is liable only "where the officer should have known that the facts recited in the affidavit did not constitute probable cause."  Rodriques v. Furtado, 950 F.2d 805, 812 (1st Cir. 1991) (quoting Briggs v. Malley, 748 F.2d 715, 721 (1st Cir. 1984), aff'd 475 U.S. 335 (1986)).  Devine has offered nothing to show that the facts contained in the supporting affidavit were insufficient, nor that the arresting officer should have known that probable cause was lacking.  As a result, this arrest does not supply a basis for a valid Fourth Amendment claim.

### 2.      October 1, 2004 Arrest

According to allegations contained in Devine's interrogatory responses -- but not her Complaint -- she was arrested again only two weeks later, on October 1, 2004.[7]  This arrest apparently stemmed from an encounter with another neighbor and long-running participant in the feud, Jocelyn Mackey, for which Devine was charged with assault with a dangerous weapon.

---

[7] Although Devine has alleged that she was subjected to three false arrests, her Complaint identifies only two such incidents: September 15, 2004, and June 21, 2005.  See Compl. ¶¶ 27, 29, 30.  From her other submissions, the Court believes the third incident was an arrest on October 1, 2004, in which she was charged with assault with a dangerous weapon.  See Pl. Interrog. Resp. at 57, 69.

<u>See</u> Pl. Interrog. Resp. at 57, 69.  Beyond this outline, the parties have provided little information

about the circumstances of the arrest.[8]  What is certain is that the Plaintiff has failed to present

any facts -- as opposed to allegations -- suggesting that this arrest occurred without probable

cause.  Indeed, the Court has no affidavits, documents, or other materials that would allow it to

hand this question to a jury.

> When a motion for summary judgment is properly made
> and supported, an opposing party may not rely merely on
> allegations or denials in its own pleading; rather, its
> response must -- by affidavits or as otherwise provided in
> this rule -- set out specific facts showing a genuine issue
> for trial.  If the opposing party does not so respond,
> summary judgment should, if appropriate, be entered
> against that party.

<u>See</u> Fed. R. Civ. P. 56(e)(2).  Because Devine has not supplied any potential proof that this arrest

occurred without probable cause, and did not even clearly identify it in her Complaint, it does

not afford a basis for a claim of false arrest.

### 3.    June 21, 2005 Arrest

Finally, Devine was arrested a third time on June 21, 2005, when she allegedly drove her

car at Waring while he was mowing his lawn, narrowly missing him.  Devine claims, as she told

police officers at the time, that Waring threw rocks and grass at her car, and she denies

threatening him with her vehicle.  <u>See</u> June 21, 2005 Police Report (document # 75-9).  The

responding police officer took oral statements from both Waring and Devine, inspected the

scene, and reported that he had been unable to find any debris or damage to the vehicle.  <u>Id.</u>; <u>see</u>

<u>also</u> Riley Testimony, Ex. 1 to Mot. for Prelim. Inj. (document # 89-2).  Both Waring and

---

[8] Presumably because this incident was not identified in the Complaint, the Defendants have not addressed it in their Motion for Summary Judgment.  Cf. Fed. R. Civ. P. 8(a); <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957) (A complaint must  "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests").

Devine were asked to submit further written statements: Waring's was collected before the officer left the scene, while Devine requested some additional time to prepare hers, and was told she could drop it off at the station.  When Devine arrived there with her statement, she was arrested and charged with intimidating a witness and assault with a dangerous weapon.  <u>See</u> June 21, 2005 Police Report.

Devine argues that her arrest was orchestrated by Sergeant L'Esperance, one of the arresting officers, despite the officers' knowledge that Waring had previously made false accusations against Devine and another woman.  <u>See</u> Pl. Interrog. Resp. at 60-62 (document 75-13).  She claims that the police had no written statement from her, no witnesses, and no corroborating evidence -- and thus no basis to arrest her.

Because no warrant appears to have issued on this occasion, the question for the Court is whether probable cause existed for Devine's warrantless arrest.  "Probable cause exists when the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that defendant had committed or was committing an offense."  <u>United States v. Pardue</u>, 385 F.3d 101, 107 (1st Cir. 2004) (quoting <u>United States v. Fiasconaro</u>, 315 F.3d 28, 34-35 (1st Cir. 2002)).  Devine claims that the officers' only source of information was Waring himself and that he was not trustworthy, accusing him of having lodged false accusations before.  Yet her assertion is contradicted by Officer Riley's investigation at the scene which, contrary to Devine's oral statement, turned up no rocks, grass, or visible damage on her car.  Moreover, the officers had reason to rely on the history between the parties.  This history included Devine's previous arrest for intimidation of a witness, following earlier charges of assaulting Waring with a dangerous

weapon -- to wit, her car -- and reckless operation of a motor vehicle.  <u>See</u> Criminal Docket, No.

0422-CR-001262 (document # 75-7).  Devine, in fact, had been warned to avoid all contact with

Waring when she appeared before Judge Doyle after her arrest on September 15, 2004.  <u>See</u>

Sept. 15, 2004 Police Report (document # 75-8).

     Based on their knowledge of the long-running neighborhood feud, Waring's statement,

and Officer Riley's investigation at the scene, the police made a credibility judgment.[9]  The

probable cause standard -- which establishes "a relatively low threshold" -- does not require

more than this.  <u>See</u> <u>White v. Town of Marblehead</u>, 989 F.Supp. 345, 349-50 (D. Mass. 1997)

(observing that police are entitled to rely on statements by "coherent and credible" witnesses).

Indeed, the First Circuit has affirmed "that police officers can justifiably rely upon the credible

complaint by a victim to support a finding of probable cause."  <u>Forest v. Pawtucket Police Dep't</u>,

377 F.3d 52, 57 (1st Cir. 2004) (citing <u>B.C.R. Transp. Co., Inc., v. Fontaine</u>, 727 F.2d 7, 10 (1st

Cir. 1984)); <u>see also</u> <u>Acosta v. Ames Dep't Stores, Inc.</u>, 386 F.3d 5, 10 (1st Cir. 2004) ("Victims'

complaints are a prime source of investigatory information for police officers.  In the absence of

circumstances that would raise a reasonably prudent officer's antennae, there is no requirement

that the officer corroborate every aspect of every complaint with extrinsic information.  The

uncorroborated testimony of a victim or other percipient witness, standing alone, ordinarily can

support a finding of probable cause.").  The facts presented here suffice to establish probable

cause for Devine's arrest.

---

[9] A victim's statement may not be enough to establish cause if there is an "indication that the information is not reasonably trustworthy or reliable."  <u>Mutter v. Town of Salem</u>, 945 F.Supp. 402, 406 (D.N.H. 1996).  It is clear, however, that based on Officer Riley's investigation and interviews at the scene, it was Devine's version of events that he found unreliable.

To the extent that Devine asserts excessive force claims under the Fourth Amendment relating to these arrests, the Court finds no evidence to support such a claim.  See Jarrett v. Town of Yarmouth, 331 F.3d 140, 148 (1st Cir. 2003) (stating that a claim of excessive force in the context of an arrest arises under the Fourth Amendment and is governed by an objective reasonableness standard) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).  At most, Devine alleges that she was arrested and handcuffed -- and her house "stormed" -- where summons might have been employed instead.  See Pl. Interrog. Resp. at 67-68.  But she offers no evidence of injury, forced entry, or any deviation from standard police procedure, especially where the choice to employ handcuffs is within the arresting officer's discretion.  See Calvi v. Knox County, 470 F.3d 422, 428 (1st Cir. 2006) (Affirming summary judgment where the officer handcuffed arrestee "in the customary manner and kept her in handcuffs for no more time than reasonably necessary").  Suffice it to say, this complaint does not rise to the level of a constitutional violation.

### E.      State Criminal Proceedings (Counts VI, VII, IX, XIII, XIV, XV, XVI, XVII, XVIII)

Beyond the arrests themselves, the Plaintiffs seek to recover, in large part, for events related to Kristi Devine's subsequent prosecution in state court for assault and battery, witness intimidation, and other charges.  Although she does not name either state prosecutors or judges in the Complaint -- presumably because they would be immune from suit -- she asserts claims for excessive bail (Count XV), excessive fines (Count XVI), cruel and unusual punishment (Count XVII), violation of her right to a speedy trial (Count XIV), and violation of her right to

notice and opportunity to be heard (Count III).[10]  She also claims that she was deprived of her

right to property (Counts VI, XIII), her right to vote (Count XVIII), her right to free speech

(Count IX), and her right to petition the courts (Count VII) as a result of the general continuance

issued by the Newburyport Court, which required Devine "not to reside" at 7 Montclair Road.

Criminal Docket, No. 0422-CR-001262 (document # 75-7).  In its broadest terms, the Complaint

alleges that the continuance exiled Devine and her family from the Town of West Newbury, a

cruel and unusual punishment which deprived them of their property, their right to vote where

they were registered, their free speech rights, and their right to access legal documents in their

home.

    These claims fail across the board.  As a factual matter, the Plaintiffs' account does not

hew to reality.  Kristi Devine was prohibited from living at 7 Montclair Road and from having

any contact with her neighbors Dale Waring and Jocelyn Mackey as a condition of the general

continuance she accepted.  Id.  Neither she nor her family were precluded from living in West

Newbury and her home was not "seized."  See Criminal Docket, No. 0422-CR-001262

(modifying conditions to allow Kristi Devine to return to the house daily).  In fact, her family

remained at the home for some time, as they were permitted to do, before renting out the

premises.  They continue to own the property.

    As a legal matter, the results of the criminal proceedings are not attributable to the

actions of the named Defendants in this lawsuit -- Devine's neighbors, elected town officials,

_____

    [10] Count III asserts a claim for violation of the Fourteenth Amendment right to substantive and procedural
due process, alleging only that the Plaintiffs were "denied the opportunity of notice and hearing."  Compl. ¶¶ 42-43.
The Complaint does not specify, however, what notice and hearing the Plaintiffs were denied.  From the Plaintiffs'
interrogatory responses, it appears that, like her speedy trial claim, Kristi Devine believes that she was denied the
opportunity to go to trial on the criminal charges brought against her.  See Pl. Interrog. Resp. at 98-100 (document
75-13).  Because theComplaint does not identify any rspecific factual basis for relief on this claim, the Court will not
consider additional allegations made only in Devine's interrogatory responses.

and West Newbury police officers.  None of these individuals conducted Devine's criminal

prosecution nor did they fashion the general continuance imposed by the Newburyport Court.

Even if the injuries that she claims were cognizable under the Constitution -- and that is far from

certain -- she has not provided the necessary causal link between the Defendants and the alleged

injuries.  Cf. Wagenmann v. Adams, 829 F.2d 196, 211-13 (1st Cir. 1987) (requiring "significant

influence" over bail determination in order to impose Section 1983 liability for excessive bail on

police officer).  For instance, in the Complaint, Devine alleges that one of the Defendants

provided "false and uncorroborated" allegations, resulting in bail set at $2,000.  Compl. ¶ 69.

But, even here, she has failed to supply credible evidence that the allegations were false, that any

Defendant exercised "significant influence" on the bail decision, or that the bail amount was

excessive.  Wagenmann, 829 F.2d at 211-13.  She does not even identify the Defendant who

allegedly provided the false testimony in the Complaint.[11]  For much the same reasons, all of

these claims must be dismissed on their face.

Claims stemming from the general continuance issued by the Newburyport Court are

barred for the further reason that Devine agreed to its conditions requiring her to reside

elsewhere.  Devine was not forced to forego a trial on the charges against her, had she wanted

one; she was neither deprived of "an opportunity to be heard," as she argues, nor of her right to a

speedy trial under the Sixth Amendment.  See Compl. ¶¶ 43, 67.  Indeed, it is not clear what

prejudice Devine suffered from any "delay" given that she was neither convicted nor held in

---

[11] Devine's description, together with her other submissions, suggest that she is referring to her neighbor, Dale Waring.  See Compl. ¶ 69 (referring to "someone with a history of making hundreds of false claims, who has a lengthy criminal history, who had no witnesses or corroborating evidence, and in the face of contradictory evidence to the alleged charges").  Yet because Waring is not a state actor, as discussed above, a Section 1983 claim cannot survive against him at all.

custody, apart from the four days she was held prior to the bail hearing.  See Barker v. Wingo, 407 U.S. 514, 530 (1972) (describing elements of speedy trial claim).  The general continuance allowed her to avoid further criminal prosecution, including a possible conviction, and she agreed to its conditions.  As a constitutional matter, then, these conditions were not punishment at all.  In particular, because Devine was never convicted of any crime, the Eighth Amendment does not supply a basis for her Section 1983 claim.  Ingraham v. Wright, 430 U.S. 651, 664 (1977) (stating that the prohibition against cruel and unusual punishments "was designed to protect those convicted of crimes").

### F. First Amendment Claims (Counts VII, VIII, IX, and X)

Finally, the Plaintiffs raise a host of First Amendment claims, alleging that the Defendants violated everything from their right to free exercise of religion to their right to petition the government for redress of grievances.  The claims that Defendants abridged Plaintiffs' freedom of speech (Count IX) and denied them access to the courts (Count VII) by "precluding" them from West Newbury have already been rejected.   Kristi Devine, not her entire family, was barred from residing at 7 Montclair Road as a condition of the general continuance issued by the Newburyport Court.  So far as the Court can tell, no one was precluded from entering the Town of West Newbury.  See Criminal Docket, No. 0422-CR-001262 (document # 75-7).  The allegation that the arrests discussed above were retaliation for the Plaintiffs' complaints to town officials, and thus an abridgement of their free speech, do not succeed because the Court has already found that they were based on probable cause.  See Pl. Interrog. Resp. at 56-57, 116-17.  At the same time, the Court has no evidence that these arrests

were motivated by an ulterior motive to silence the Plaintiffs' speech or impair their other First Amendment rights.

The Plaintiffs' free exercise claim (Count VIII), which argues that they were harassed and intimidated on the basis of their "perceived" religious affiliation, fares no better.  See Compl. ¶ 55.  They do not identify a single religious activity or belief burdened by the Defendants' actions, thus the grievance is properly styled as an equal protection claim -- one which the Court rejected above.

Plaintiffs further claim that the Town Defendants violated their First Amendment rights by denying them access to public records (Count VII), denying them access to and opportunity to speak at public town meetings, and failing to respond to Kristi Devine's numerous grievances and complaints (Count X).  See Compl. ¶¶ 53, 59; Pl. Interrog. Resp. at 5-15, 99-104 (document 75-13).  The records at issue are primarily police reports and documents that Devine sought in discovery related to the criminal charges against her.  Id. at 99-104.  Any misconduct in this context, however, is not redressable under the First Amendment.  There is no generalized right to examine police files.  Cf. Ctr. for Nat'l Sec. Studies v. United States DOJ, 331 F.3d 918, 934 (D.C. Cir. 2003) ("The narrow First Amendment right of access to information . . . does not extend to non-judicial documents that are not part of a criminal trial, such as the investigatory documents at issue here."); Massachusetts Public Records Act, Mass. Gen. L. ch. 66, § 10 (providing procedures and fees for accessing public documents).  To the contrary, the Massachusetts Rules of Criminal Procedure and, in particular Rule 14, govern pre-trial discovery in criminal cases.  See also Brady v. Maryland, 373 U.S. 83 (1963) (requiring the government to disclose exculpatory evidence).  These Rules provide sanctions for the type of misconduct in

discovery that the Plaintiffs allege here.  <u>See</u> Mass. R. Crim. Pro. 14(c) (sanctions for noncompliance).  To the extent that Devine sought these materials to support her criminal defense, the case never went to trial, let alone produced a conviction, and thus she can claim no prejudice.

Devine's remaining complaints about access to public meetings and her opportunity to speak in those settings lack all specificity.  The only incident she identifies is a Town Selectmen's Meeting on September 11, 2004, at which she was allegedly barred from reading an "open letter" into the record.  <u>See</u> Pl. Interrog. Resp. at 56-57.  Without commenting on the merits of such a claim, the Court observes that this incident falls outside the statute of limitations, which bars any claims based on events prior to September 14, 2004.

For separate reasons, Devine's claim that the Town Defendants were not responsive to her complaints also fails.  It is clear that Devine had an extraordinary number of contacts and communications with both elected town officials and town police.  <u>See, e.g.</u>, Pl. Interrog. Resp. at 5-15, 42, 44; Police Log of Devine Calls (document # 75-5).  The First Amendment does not guarantee any specific form of relief in response to her myriad complaints, which she repeatedly pressed on officials at public meetings, in open letters, and at the local Food Mart.  <u>See</u> Pl. Interrog. Resp. at 5-6, 10, 56-57.

### G. Pendent State Law Claims

Because the Court finds that there is no basis to proceed on the Plaintiffs' federal claims, it declines to exercise pendent jurisdiction over their seven additional state law claims.  <u>See</u> Compl. ¶¶ 78-94; <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988).  Without reaching the merits, the state claims are dismissed in their entirety.

VII.   <u>**CONCLUSION**</u>

For the foregoing reasons, the Defendants' Motion for Summary Judgment (document # 72) is **GRANTED**, and Plaintiffs' First Motion to Dismiss Defendants' Motion for Summary Judgment (document # 79), which the Court construes as a motion for further discovery pursuant to Rule 56(f), is **DENIED**.

**SO ORDERED.**

**Date: July 10, 2009**                    */s/ Nancy Gertner*
                                           **NANCY GERTNER, U.S.D.C.**